## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bruce Allen Blanton, | ) | C/A No. 0:20-1032-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER ON PLAINTIFF'S APPEAL** |
| v. | ) | **FROM THE SOCIAL SECURITY** |
| | ) | **ADMINISTRATION'S DENIAL OF** |
| Andrew Saul, Commissioner of the Social | ) | **SOCIAL SECURITY BENEFITS** |
| Security Administration, | ) | |
| | ) | ☐  Affirmed |
| Defendant. | ) | ☒  Reversed and Remanded |
| | ) | |

      This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

## Part I—Plaintiff seeks:

☐      Supplemental Security Income ("SSI")

        Application date: _____      Plaintiff's age at filing: _____

☒      Disability Insurance Benefits ("DIB")

        Date last insured:  <u>December 31, 2020</u>

☐      Other:

Plaintiff's Year of Birth:  <u>1972</u>

Plaintiff's alleged onset date:  <u>April 15, 2015</u>

## Part II—Social Security Disability Generally

      Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and/or § 416.905(a); <u>see also</u> <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below. 20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. <u>Id.</u>

      A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); <u>see also</u> <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983); <u>Hall v. Harris</u>, 658 F.2d 260, 264-65 (4th Cir. 1981); <u>Wilson v.</u>

Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision:  February 25, 2019

In applying the requisite five-step sequential process, the ALJ found:

Step 1:            Plaintiff was engaged in substantial gainful activity during the relevant time period:
                   ☐  Yes  ☒  No

From April 15, 2015 to January 8, 2018:
Step 2:            ☒  Plaintiff has the following severe impairments:
                   Lumbar degenerative disc disease status-post long-term narcotics medication and lumbar-fusion surgery (20 CFR 404.1520(c)).

                   ☐  Plaintiff does not have a severe impairment.

Step 3:            ☒  Plaintiff's impairment(s) does/do not meet or medically equal a Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:            Plaintiff's Residual Functional Capacity is as follows:

                   [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the ability to stand or walk in an 8-hour day is reduced to 1-hour; occasionally reach overhead bilaterally; occasionally climb ramps and stairs; occasionally balance, stoop, kneel and crouch; never climb ladders, ropes and scaffolds; never crawl; never work at unprotected heights, never operate a motor vehicle as an occupational requirement[], or work on uneven terrain; avoid concentrated exposure to extreme cold; needs an assistive device such as a cane for prolonged ambulation, ascending or descending slopes or traversing over uneven terrain; expected time off task of 15 percent or more of the working day beyond normal breaks; and expected to be absent from work two or more days on a consistent basis monthly.

                   ☐  Plaintiff could return to his/her past relevant work.

Step 5:            ☐   Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App'x 2.

                   ☐ Plaintiff could not return to his/her past relevant work, but there are jobs in the national economy that Plaintiff can perform, as follows:

                   ☒  Plaintiff could not return to his/her past relevant work, and there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).  Accordingly, Plaintiff was under a disability from April 15, 2015 through January 8, 2018.

Since January 9, 2018:
Step 2:            ☒  Plaintiff has the following severe impairments:
                   Lumbar degenerative disc disease status-post long-term narcotics medication and lumbar-fusion surgery (20 CFR 404.1520(c)).

                   ☐  Plaintiff does not have a severe impairment.

Step 3:         ☒  Plaintiff's impairment(s) does/do not meet or medically equal a Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:         Medical improvement occurred as of January 9, 2018, and Plaintiff's Residual Functional Capacity is as follows:

[T]he claimant . . . had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the ability to stand or walk in an 8-hour day is reduced to 2-hours; requires sit and stand option, that is, brief postural change at or near the work station no more frequent than 2 times in an hour and a duration no greater than 5 minutes each; occasionally reach overhead bilaterally; occasionally climb ramps and stairs; occasionally balance, stoop, kneel and crouch; never climb ladders, ropes and scaffolds; never crawl; never work at unprotected heights, never operate a motor vehicle as an occupational requirement[], or work on uneven terrain; and avoid concentrated exposure to extreme cold.

☐  Plaintiff could return to his/her past relevant work.

Step 5:         ☐  Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App'x 2.

☒  Plaintiff could not return to his/her past relevant work, but there are jobs in the national economy that Plaintiff can perform, as follows:

touch-up screener (DOT 726.684-110, sedentary, SVP 2, unskilled, with 12,000 jobs available nationally); surveillance systems monitor (DOT 379.367-010, sedentary, SVP 2, unskilled, with 25,000 jobs available nationally); and telephone information clerk (DOT 237.367-046, sedentary, SVP 2, unskilled, with 90,000 jobs available nationally).

Date of Appeals Council decision:  January 28, 2020

## Part IV—Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d at 589; see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  Biestek, 139 S. Ct. at 1154 (citation omitted).  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## Part V—Issues for Judicial Review

Although Plaintiff has framed numerous issues for judicial review, the crux of the majority of Plaintiff's arguments is that the ALJ erred in weighing the opinion evidence and in finding medical improvement as of January 9, 2018.

**Oral Argument**

⊠ **Held on __December 10, 2020__**

☐ **Not necessary for disposition**

**Summary of Reasons[1]**

In reviewing an ALJ's decision, the United States Court of Appeals for the Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)); see also Arakas v. Comm'r, __ F.3d __, 2020 WL 7331494, at *9 (4th Cir. Dec. 14, 2020). Moreover, an ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion." Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)); see also SSR 96-8p. Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated. Mascio, 780 F.3d 636-37. The ALJ must "build an accurate and logical bridge from the evidence to his conclusions." Monroe, 826 F.3d at 189.

Here, Plaintiff challenges the ALJ's evaluation of the opinion evidence from his treating physicians, Dr. Steven Poletti, Dr. Barry Weissglass, and Dr. Herber Watson. The law applicable to Plaintiff's application provides that regardless of the source, the Commissioner will evaluate

---

[1] The court notes that numerous social security regulations and social security rulings (SSRs) have changed effective March 27, 2017. However, these changes specifically state that they are applicable to claims filed on or after March 27, 2017. See, e.g., 20 C.F.R. §§ 404.1513, 404.1527. Because the instant claim was filed before that time, all references in the instant Order are to the prior versions of the regulations and SSRs in effect at the time Plaintiff's application for benefits was filed, unless otherwise specified.

every medical opinion received. 20 C.F.R. § 404.1527(c). Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See id. The United States Court of Appeals for the Fourth Circuit has recently reiterated the treating physician rule in Arakas v. Commissioner, __ F.3d __, 2020 WL 7331494 (4th Cir. Dec. 14, 2020), explaining that it "requires that ALJs give 'controlling weight' to a treating physician's opinion on the nature and severity of the claimant's impairment if that opinion is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with the other substantial evidence' in the record." Id. at *16 (quoting 20 C.F.R. § 404.1527(c)(2)). If a treating physician's opinion is not accorded controlling weight, it still must be evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). The Arakas Court observed that "SSR 96-2p further notes that '[i]n many cases, a treating [physician's] medical opinion will be entitled to the *greatest* weight and should be adopted, even if it does not meet the test for *controlling* weight.'" Arakas, 2020 WL 7331494, at *16 (alterations and emphasis in original) (quoting SSR 96-2p). Importantly, a "treating physician's testimony is ignored *only* if there is persuasive contradictory evidence." Id. (emphasis in original) (quoting Coffman v. Bowman, 829 F.2d 514, 518 (4th Cir. 1987)). Further, while the ultimate conclusion about whether a claimant is disabled

is reserved to the Commissioner, a medical opinion regarding limitations that would support such

a conclusion must be considered.  See Arakas, 2020 WL 7331494, at *19.

> The ALJ discussed the opinions at issue and found as follows:
>
> The assessments by treatment providers Barry Weissglass, MD and Steven C. Poletti, MD (Exhibits 14F; 15F) are assigned some weight to the extent they support sedentary work activity due to impact of variability and severity of pain during the relevant period despite conservative treatment, and surgical intervention as it relates to the period from April 15, 2015 through January 8, 2018.  After January []2018, the evidence of record simply does not support the indicated limitations, particularly given evidence that the claimant now controls when he takes with no need for time off task or work absences as found in the closed period.  Further, the claimant's now reduced pain and now no longer needing a cane for ambulation, supports a finding that standing and walking restrictions can be increased.
>
> The assessment by Herber Watson, DO, a new treatment provider, is assigned little weight based on post-surgery progress notes showing significant improvement in pain, no use of a cane and only occasional use of narcotics for pain control.

(Tr. 33-34) (errors in original).  Thus, the ALJ appears to have found that these opinions were not

entitled to controlling weight because they were inconsistent with evidence in the record

suggesting that after January 8, 2018 Plaintiff's condition was more controlled such that he could

perform a reduced range of sedentary work.  Further, reading the ALJ's decision as a whole, the

ALJ appears to have relied primarily on Plaintiff's nine-month post-surgery follow-up

appointment and an examination in July 2018 to find that Plaintiff's limitations had improved.

Specifically, the ALJ found:

> As of January 8, 2018, 9 months status-post surgery, progress notes indicated that overall, the claimant was managing fairly well from surgery, with pain level varying with activity such as bending, stooping and heavy repetitive lifting, which increased his pain.  At that visit, the claimant rated his pain at 2 out of 10, but stated that cold weather changes have had a major [e]ffect on is pain.  He reported only taking pain medications occasionally and mainly at night and occasionally 1 to 2 throughout the day and used Soma when experiencing back spasms.  (Exhibit 18F/3)  Physical examination in January 2018 indicated that although there was tenderness to palpation in the lumbar spine along with some decreased range of motion, heel and toe walk were normal and his surgical scar was well healed.  He was noted to be wearing a back brace.  (Exhibit 16F/8)  Again in July 2018, the

claimant reported that he had good days and bad days, but mainly required pain medication at night and occasionally throughout the day pending his activity level; he also used Soma occasionally at night. He was noted as stable on current pain regimen. It was noted by physician assistance Amanda Harridge, PA-C, that the claimant could not stand for extended periods of time; unable to do any kind of repetitive pushing, twisting, pulling or lifting greater than 10-15 pounds; most likely would have to take scheduled breaks throughout the course of the day and keep his legs elevated; and required analgesic medication that interferes with his ability to do sedentary jobs. (Exhibit 18F/9) However, this functional assessment is assigned little because it is not supported by the evidence of record following surgery. The claimant now controls when he takes medications and has indicated that he takes them mainly at night, which therefore should not affect his ability to perform sedentary work during the day. Further, there is no evidence of leg swelling in physical examinations that requires leg elevation during the day and a requirement was unscheduled breaks. While the evidence of record supports work limitations at a reduced sedentary level, the extreme limitations described above is not supported.

(Tr. 36) (errors in original).

Upon careful review of this matter, the court is unable to conclude the ALJ's decision is supported by substantial evidence. As indicated above, a treating physician's opinion "*must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is contradicted by the other substantial evidence in the record." Arakas, 2020 WL 7331494, at *17 (emphasis in original). If the ALJ does not give the opinion controlling weight, then he must apply the applicable factors listed in 20 C.F.R. § 404.1527(c) to decide how much weight should be accorded to the opinion. Here, the ALJ appears to have cherrypicked the evidence and ignored the evidence supporting opinions from three separate treating physicians, including the consistency of the opinions themselves. For example, there is evidence:

- in April 2018 of marked limitation of flexion/extension, strongly positive straight leg raising on right, and dysesthesia in the posterior aspects of his buttocks, hip, and right leg with indications that Plaintiff cannot stand for extended periods of time, cannot sit for

extended periods of time, and will most likely need unscheduled breaks throughout the course of the day and to keep his leg elevated (Tr. 699);

- in July 2018 rating his pain five out of ten with good and bad days, requiring oxycodone mainly at night and occasionally throughout the day depending on his activity level, marked limitation of flexion/extension, positive straight leg raising on right, and that his analgesic medication would interfere with his ability to do sedentary work (Tr. 701);

- in July 2018 that Plaintiff was using oxycodone daily (Tr. 690);

- by October 2018 reports that the oxycodone is not helping him as he gets between four and six hours between doses, limitations with his gait and mobility, and difficulty going from sitting to standing (Tr. 704); and

- by November 2018 reports of improvement with the addition of a Butrans patch and utilizing oxycodone for breakthrough pain with a maximum of four tablets a day, pain of six out of ten, indications of successful pain resolution but remaining unable to stand or sit for prolonged periods of time, and indications that his opiate therapy can be "cognitive inhibiting to him" (Tr. 705).

Thus, contrary to the ALJ's findings the evidence does not demonstrate that Plaintiff mainly required his pain medications only at night for the entire period at issue. In fact, the records appear to support Plaintiff's assertion that his improvement in January 2018 was not sustained. Moreover, after determining the opinions were not entitled to controlling weight, the ALJ's cursory analysis of these opinions does not suggest that the ALJ considered all of the requisite factors in weighing each of these opinions.

Compounding these problems is the fact that the ALJ did not have the benefit of the records which were later submitted to the Appeals Council and that suggest a continued decline through

Bruce Allen Blanton

2019. (See Tr. 8-15.) These records were not accepted by the Appeals Council based on its determination that they did not relate to the period at issue. (Tr. 2.) As these records demonstrate suggest a continued decline of an existing condition, they arguably relate to the period on or before the date of the ALJ's decision. See Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc) (stating that evidence submitted to the Appeals Council with the request for review must be considered in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision"); cf. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 345 (4th Cir. 2012) (holding that the Commissioner "must give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be 'reflective of a possible earlier and progressive degeneration' "); Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011) (reversing and remanding the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits). Therefore, remand for further consideration of these records is warranted as well.

In summary, upon review of the ALJ's decision and the record, the court is unable to determine that the ALJ's decision to discount the above opinions is supported by substantial evidence. See 20 C.F.R. § 404.1527(c); Arakas, 2020 WL 7331494, at *16. Even considering the ALJ's decision in its entirety, the ALJ appears to have cherrypicked the record and it is unclear whether the ALJ applied the requisite factors. See id.; see also Lewis, 858 F.3d at 869. The court further finds that the ALJ has failed to sufficiently explain how the evidence supports his conclusions and meaningful review is frustrated. See Monroe, 826 F.3d at 190; Mascio, 780 F.3d 636-37. Moreover, where, as here, the record appears to contain conflicting medical evidence, it

is the purview of the ALJ to first consider and weigh the evidence, and resolve the conflict.  See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).  Therefore, the court is constrained to remand this matter for further consideration of this opinion evidence only as it relates to the period beginning January 9, 2018.

## ORDER

☐    **Affirmed for the reasons stated on the record.  Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☒    **Reversed and remanded pursuant to ☒ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration of the period beginning January 9, 2018 and consistent with this Order.**

☐    **Reversed and remanded for an award of benefits.**

**IT IS SO ORDERED.**

December 23, 2020                              Paige J. Gossett
Columbia, South Carolina                  UNITED STATES MAGISTRATE JUDGE